## McVAY v. SWIFT et al.
### No. 8971.

Circuit Court of Appeals, Fifth Circuit.

March 25, 1939.

Rehearing Denied April 18, 1939.

Lemuel H. Doty and Albert Sidney Johnston, Jr., both of Biloxi, Miss., and

772

John W. Lewis, of Opelousas, La., for appellant.

E. B. Dubuisson, of Opelousas, La., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

In 1920 Charles H. Swift sold the lands here in controversy to Hamp A. Morrison. Part of the purchase price was paid in cash and Morrison executed his three notes secured by vendor's lien and mortgage for the balance. On November 27, 1920, Morrison sold the property to C. T. Whitman Lumber Company subject to Swift's vendor's lien.

The Lumber Company defaulted in the payment of taxes for the year 1924. The property was sold to the State, but was redeemed with money furnished by Swift. Thereafter Swift paid the taxes on the property.

In 1933 Swift filed suit against the Lumber Company as subrogee of nine receipts for taxes paid by him for the years 1924 to 1933 inclusive. He obtained judgment for the amount demanded with "subrogation to all the rights of the State of Louisiana." The judgment was recorded on May 20, 1933, and thereafter the property was seized and sold in accordance with the laws of Louisiana and Swift became the purchaser at the execution sale.

In 1928 C. T. Whitman Lumber Company and W. A. McVay entered into an option contract for the sale of the lands. On December 31, 1928, while the option was in effect, McVay made an alleged tender to C. T. Whitman, president of the Lumber Company. This tender was refused. McVay took no further action until five and one half years later, July 31, 1934, almost a year after the property had been sold to Swift under execution, when he filed a bill in equity seeking specific performance of the promise to sell, or in the alternative for damages with a lien on the lands. The bill also attacked the execution sale as being "null and void." The Lumber Company, C. T. Whitman, and Swift were named parties defendant. On May 24, 1935, a decree pro confesso was entered against all these defendants, but on July 20, 1936 the said decree was set aside as to Swift. On January 11, 1937 the court below rendered judgment dismissing the bill in so far as it concerned Swift and the lands in controversy.

McVay then brought his appeal to this court. On that appeal, McVay v. Swift, 5 Cir., 91 F.2d 208, 209, we held that McVay had not elected in writing to exercise his option, "but merely made an oral tender of performance, no contract of sale resulted, and neither optionee nor optionor could compel the other to perform." We also held that nothing pleaded by McVay entitled him to assert a claim against Swift or the lands described in the bill and that no equitable lien arose in support of the money judgment he had obtained for damages. The judgment of the lower court was affirmed "without prejudice to plaintiff's right to pursue the lands by creditor's bill, or other appropriate proceedings as the property of the lumber company."

Following the former opinion McVay filed a creditor's bill. After a hearing on its merits the bill was dismissed. From the action of the trial court in dismissing the bill McVay has brought this second appeal.

The court below was correct in its construction of the former opinion. McVay had by default simply obtained a money judgment against the Lumber Company and nothing more. It is clear that he had no valid claim against the Lumber Company prior to the rendition of the default judgment, and therefore, was not entitled, either in equity or under the laws of Louisiana, to attack the execution proceedings of Swift, for the reason that his claim was not in existence when such proceedings took place. Revised Civil Code (Dart's 1932 Ed.) Art. 1993, and authorities there cited.

The facts clearly establish that Swift sold the property to Morrison; that Morrison sold to the C. T. Whitman Lumber Company; that Swift redeemed the property from the State for taxes in 1924, and thereafter paid the taxes and purchased the lands at execution sale. There is nothing in the record to sustain appellant's theory that the title and possession of Swift was fraudulent or simulated. See, Ideal Savings & Homestead Ass'n v. Gould, 163 La. 442, 112 So. 40.

It results that the judgment is affirmed.